Nickerson, Gary A., J.
This action arose after the plaintiffs, James F. and Doris T. Casey, were expelled from Allen Harbor Yacht Club (“AHYC”), a private organization. They seek a declaratory judgment to reinstate their membership. The defendant, AHYC filed a motion for summary judgment.
BACKGROUND
The court views the facts in the light most favorable to the Caseys, the non-moving party. The Caseys were long-term members of the AHYC, and had agreed to be bound to the club’s bylaws and code of conduct. *565 The AHYC Board voted to expel the Caseys in August 2005. Although the incident that gave rise to the expulsion occurred in July 2005, the relationship between the Board and the Caseys started to disintegrate in November 2003.
The Caseys, and other members, first expressed concern about the finances and current club leadership in a letter dated November 28, 2003. The letter instigated a series of communications and meetings between the Caseys and the Board during the following four months. In March 2004, the Board suspended, but then conditionally reinstated, the Caseys’ status as AHYC members. The Board sent a letter to the Caseys following its suspension-reinstatement decision. The letter memorialized the Board’s belief that the Caseys’ conduct during this dispute harmed AHYC and it forewarned the Caseys that any future transgression of the Club rules would result in their expulsion from the Club. The Caseys assert that they were not treated fairly during this period of disagreement.
The incident that brought about the expulsion at issue occurred on July 12, 2005. Three individuals, one of whom served on the Board, contend that the Caseys pushed some of them on a dock at the club. The alleged victims of this battery sent written complaints to the then-Commodore William Cullinane. The Caseys deny the alleged battery. As a result of the allegations, Cullinane called for a special session of the Board to meet on July 23, 2005. The Caseys were not interviewed before the July 23 meeting. After the July 23 meeting, the Board decided to conduct a further investigation into the July 12 incident. The Board scheduled a follow-up hearing for July 30 to decide how to respond to the incident.
Cullinane sent a letter to the Caseys on July 23, 2005. In this letter, Cullinane notified the Caseys of the upcoming July 30 meeting. The Caseys point to Cullinane’s letter as evidence that the procedures afforded to them were unfair. They contend that they were presumed guilty before they had a chance to present their side of the evidence to the Board. Cullinane’s letter expressed his opinion that the incident, “as described” violated the code of conduct. The letter states that the Board’s decision will hinge on the facts it assembles, including any statement the Caseys wish to make on or before the July 30 meeting. James Casey attended the July 30 meeting with his son and presented his version of the facts to the Board.
The Board never took a statement from Doris Casey nor did she volunteer any statement to the Board. The Caseys’ attorney only received relevant materials from the July 23 meeting a day or two prior to the July 30 meeting. Their attorney was not present at the July 30 meeting. The Caseys assert that they did not have adequate representation from counsel during this proceeding. The Board found that the Caseys violated the Code of Conduct and it voted to revoke their membership. The statements in hand from the interested parties provided the sole evidence upon which the Board reached its conclusion.
AHYC expelled the Caseys based upon the bylaws in effect during 2005. AHYC’s bylaws were properly amended by the club’s legal committee and approved by two-thirds of the club’s membership at the annual meeting, held in August 2004. The 2004 hearing, suspension, and membership reinstatement were based upon a less detailed set of bylaws in effect before the bylaws were amended in August of that year. The Caseys argue that the August 2004 amendments to the disciplinary portion of the bylaws were motivated by their previous challenge to the Board.
The AHYC bylaws, as amended, provide in relevant part: “The Board of Directors, by a vote of two-thirds of its members present at a duly constituted meeting, may suspend or expel any member found guilty of conduct inconsistent with the welfare, interest and character of the club, provided that such notice of the charge be mailed to the member concerned at such member’s last known address at least seven days prior to the meeting at which such action is to be taken and such mailing shall constitute notice under this provision. At such meeting such member may be heard and may respond to such charges if so desired.” (Allen Harbor Yacht Club, Inc. Bylaws, Art. X.) The bylaws define the word “member” to include a husband and wife, so that AHYC considers James and Doris Casey as one member. (Allen Harbor Yacht Club, Inc. Bylaws, Art. Ill, §1.)
The Caseys presented evidence to the court that the Board handled at least one factually similar incident, an alleged battery between members, differently than it handled the allegations leveled against the Caseys. The parties disagree as to whether this incident is factually similar to the Caseys’ incident and they disagree about whether the proper procedures were followed to handle this other incident. For purposes of this motion, this Court assumes that the Board handled this factually similar incident differently than it handled the incident that lead to the Caseys’ expulsion.
The Caseys filed a two-count claim with this Court. First, they seek a declaratory judgment from the Court to reinstate their status as members of AHYC. Second, they seek reinstatement based on an assertion that AHYC violated the terms of their membership agreement.
DISCUSSION
I. Standard for Summary Judgment
A motion for summary judgment should be granted where it appears from the pleadings and evidentiary materials offered that there are no genuine issues of material fact and that the moving pariy is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). If the moving party does not bear the *566 burden of proof at trial, it must either submit affirmative evidence negating an essential element of the non-moving party’s claim or demonstrate that the non-moving party’s evidence is insufficient to establish its claim. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). The party opposing the motion must respond and allege specific facts to establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Since the complaint requested a declaratory judgment, the judge must “declare the rights of the parties” even if the judge grants the motion for summary judgment. Molly A. v. Commissioner of the Dept of Mental Retardation, 69 Mass.App.Ct. 267, 288-89 (2007) (citing 146 Dundas Corp. v. Chemical Bank, 400 Mass. 588, 589 n.4 (1987)).
II. The Legal Standard Used by the Court to Review the Expulsion of Members from Private Clubs.
Both parties rely on the legal considerations expounded by the Supreme Judicial Court in Richards v. Morison, to frame their arguments. 229 Mass. 458, 461 (1918) (upholding member’s expulsion because the club followed its own internal procedures established in its bylaws). In Richards, the plaintiff challenged his expulsion from a private, social club. Despite the passage of ninety years, this court confronts a factually similar dispute and the considerations from Richards apply here. By joining a private organization, the plaintiff agreed to the organization’s disciplinary rules and thereby accepted liability for expulsion, when ordered in accordance with the organization’s rules. Id. at 460.
The court must not serve as a board of general appeal to review the rationale of the club’s conduct as it relates to the expulsion of members. The court limits its review to the following general considerations: “[1] whether the essential formalities required by the constitution and bylaws of the association have been complied with, [2] whether the proceedings have been regular, [3] whether the cause assigned is one sufficient in law to warrant expulsion, [4] whether the member has been given a fair chance to present his side of the controversy so as to satisfy the requirements of natural justice, [5] whether the decision is within the scope of the jurisdiction and whether it has been reached in good faith, and [6] whether the action appears to have been within the exercise of sound reason or to have been capricious, arbitrary and irrational.” Id. at 461. The court does not need to review these considerations mechanically. Id. The first three considerations lend themselves to simple inspection and easily determinable outcomes. The last three interject a degree of value-based considerations, open to potentially different, yet equally reasonable outcomes.
A handful of other Supreme Judicial Court cases, heard in the wake of Richards, help this court apply those more pliable standards like fairness, good faith, and natural justice. Those cases have made an important distinction that applies here; namely, the court must apply notions of fairness, good faith, and natural justice to the procedures followed by the club, but not the substance of its decision. Snay v. Lovely, 276 Mass. 159, 163-64 (1931) (“Courts do not sit in review of decisions thus made by such officers, even though it may appear that there has been an honest error in judgment, an innocent mistake in drawing inferences or making observations, or a failure to secure all information available by a more acute and searching investigation”); Eustace v. Dickey, 240 Mass. 55, 83 (1921) (“The discretion of those possessing the power of removal, when applied in good faith, is not subject to re-examination in respect of its wisdom. The judgment of the court cannot be substituted for the discretion of the constituted authorities, when fairly exercised”).
The undertakings of private clubs require substantially less formality than the rights and procedures afforded to parties who appear before the courts of the Commonwealth. The Supreme Judicial Court does not require the club to hold a hearing prior to removing a member. Eustace, 240 Mass. at 85. Significantly, in the Eustace case, the Supreme Judicial Court found that removal of only one trustee, when there were grounds to remove other trustees, did not support a conclusion that the board acted in an arbitrary or capricious manner. Id. at 84-85. Members of clubs do not enjoy an absolute right to counsel. Richards, 229 Mass. at 466. The rules of evidence do not apply to internal club proceedings. Id. “[A] failure to secure all information available by a more acute and searching investigation” will not render a private club’s decision invalid. Snay, 276 Mass. at 163-64. A club must hold a hearing and make definitive findings only when the bylaws permit removal only “for cause.” Dittemore v. Dickey, 249 Mass. 95, 110-12 (1924) (finding that administrative or executive determinations to remove a member need not comply with judicial formalities).
Therefore, the decision of a club’s tribunal stands, so long as it acted without bad faith and it reached its decision by following the procedures it describes in its own bylaws. Donovan v. Travers, 285 Mass. 167, 174 (1934).
III. Count I: Declaratory Judgment
The Caseys assert that the bylaws were amended in August 2004 as a result of their initial disagreement with the Board. Since the Caseys do not allege any impropriety with the procedures followed to amend the bylaws, this court finds that the bylaws, as amended by the membership in August 2004, apply to this dispute. The allegation that the bylaws were amended in contemplation of eventually expelling the Caseys— even if this is true — does not overcome their validity, especially since a super-majority of the entire club membership voted in favor of the amendments. The *567 procedures require notice, the opportunity for the accused member to be heard by the board, and a two-thirds vote by the Board to proceed with a sanction.
The Caseys argue that they did not receive notice seven days before the hearing. The bylaws require the board to mail notice of the charge seven days in advance of the hearing. The fact that the Caseys did not receive the letter seven days in advance of the hearing does not violate the notice requirement of the AHYC bylaws. The Board provided the Caseys with sufficient notice, as required by the AHYC bylaws. James Casey attended the July 30 hearing and he presented his side of the stoiy. The bylaws do not give members the right to counsel in procedures before the Board. The Caseys do not dispute the proper “validation” of the Board’s vote.
AHYC satisfied the initial three considerations described in Richards. The Board followed the procedures required by its bylaws. Evidence that the Board has treated one member who experienced a similar incident on one occasion differently fails to show sufficient “lack of regulariiy" or procedural fairness due to all members of AHYC. The Caseys’ alleged conduct on July 12 gave the Board sufficient grounds for expulsion. Passing on the wisdom and the substance of the Board’s underlying findings falls outside of this Court’s purview. Eustace recognizes that a Board may treat seemingly similar members in seemingly similar circumstances differently. 240 Mass. at 84-85.
The Caseys fail to raise any genuine issues of material fact concerning whether AHYC failed to abide by the more pliable considerations described in Richards. The Caseys, as a single “member,” and represented by James Casey’s participation at the July 30, 2005 meeting, were heard by the Board. The hearing met the minimal requirements supplied by the Supreme Judicial Court. Natural justice takes no offense when one party conducts an investigation based on the bare allegations provided by just one side of a dispute. The Board would have offended notions of natural justice if it prohibited the Caseys from presenting their side of the story before it decided their fate.
The undisputed minutes of the July 30 meeting show that the Board contemplated the alleged violation of the Code of Conduct for two hours before it concluded that a violation occurred. After announcing this finding the Board took another fifty minutes to decide upon an appropriate sanction. The sanction fell within the jurisdiction and power of the Board as provided by the AHYC bylaws and code of conduct. Therefore, the procedures followed by the Board satisfy the remaining considerations described in Richards. Moreover, these procedures seem to exceed the minimum requirements since AHYC could expel members even in the absence of just cause. Dittemore v. Dickey, 249 Mass. at 110-12.
The Caseys’ remaining allegations — lack of proper representation by counsel, inability to question the opposing witnesses, the Board’s failure to take Mrs. Casey’s statement, improper motives of the Board, inconsistent application of the bylaws to other members, the disputed facts surrounding the July 12 incident — present this Court with legally irrelevant facts. Snay v. Lovely, 276 Mass. at 163-64. This Court upholds the Board’s decision to expel the Caseys and finds that AHYC is entitled to a declaratory judgment.
IV. Count II: Good Faith & Fair Dealing
The fact that the Caseys and AHYC entered into an obligation in the nature of a contract does not modify the decision of this Court. The Caseys received all of the procedures entitled to them by the terms of their membership agreement. The implied covenant of good faith and fair dealing does not give this Court the right to invade the inner workings of private associations. Snay, 276 Mass. at 163. The analysis applied to Count I applies equally to Count II. The Court grants the Defendant’s Motion for Summary Judgment as to Count II of the Casey’s complaint.
ORDER
It is therefore ORDERED that summary judgment enter for the defendant. It is DECLARED and ADJUDICATED that the Caseys’ expulsion from AHYC July 30, 2005 was proper under the AHYC bylaws.